IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2005 NOV 23 A 11: 35
LORETTA G. WHYTE
CLERK

| | |
|---|---|
| NEW ORLEANS LOUISIANA SAINTS, L.L.C. * | CIVIL ACTION |
| and NFL MANAGEMENT COUNCIL * | |
| * | NUMBER: 05-6054 |
| VS. * | |
| * | SECTION: |
| KEYUO CRAVER and * | |
| THE NATIONAL FOOTBALL LEAGUE * | MAGISTRATE: |
| PLAYERS ASSOCIATION * | |
| * | SECT. T MAG. 4 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT TO CONFIRM ARBITRATION AWARD

This is an action by the New Orleans Louisiana Saints, L.L.C. and the National Football League Management Council, through undersigned counsel, to confirm an arbitration award issued in an arbitration proceeding conducted pursuant to a collective bargaining agreement between Plaintiffs, New Orleans Louisiana Saints, L.L.C. and NFL Management Council, and Defendants, Keyou Craver and National Football League Players Association, as follows:

I. JURISDICTION AND VENUE

1.

This is an action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1995) (hereinafter "Section 301"), by reason of which this Court has federal question jurisdiction.

2.

Venue is proper in this Court under 29 U.S.C. § 185 (c).

Fee 250.
✓ Process
X Dktd
___ CtRmDep
___ Doc. No.

II.  THE PARTIES

3.

The New Orleans Louisiana Saints, L.L.C. ("Saints") is one of the member clubs of the National Football League ("NFL").  The Saints is a Texas Limited Liability Company with its principal place of business in Metairie, Jefferson Parish, Louisiana.

4.

The NFL Management Council is an association with its principal place of business in New York.  The NFL Management Council is the sole and exclusive bargaining representative of present and future employer member clubs of the NFL.

5.

Keyuo Craver ("Craver"), an individual over the age of majority, was a professional football player employed by the New Orleans Saints as of July 26, 2002, when the events that are the subject of the underlying arbitration occurred.  Upon information and belief, defendant Craver presently lives in Canada.

6.

The NFL Players Association ("NFLPA") is an association incorporated in the Commonwealth of Virginia with its principal place of business in Washington, D.C.  The NFLPA is a labor organization certified by the National Labor Relations Board as the exclusive bargaining representative of all NFL players.  The NFLPA regularly represents players employed in this judicial district for the purposes of collective bargaining and some of its members reside in the Eastern District of Louisiana.

## III. FACTUAL BACKGROUND

7.

The parties are bound by a Collective Bargaining Agreement ("NFL CBA") negotiated between the NFL Management Council, on behalf of NFL clubs, and the NFLPA, on behalf of all NFL players. The terms and conditions of the entire NFL CBA are incorporated herein as if copied herein *in extenso*. (Article IX of the NFL CBA, containing provisions relevant to this matter, is attached hereto as Exhibit "A").

8.

In accordance with the NFL CBA, the Saints and Craver entered into an NFL Player Contract ("Contract") setting the terms of Craver's employment, which Contract is governed by Article XIV of the NFL CBA. The Contract included a $273,250.00 Signing, Reporting and Playing Bonus for Craver's promise to adhere to all of the Contract's terms, including avoiding suspension under the NFL Drug Program. The express language of the Bonus Addendum to the Contract set forth a forfeiture schedule specifying the amount to be repaid in the event of Craver's default. The terms and conditions of the Contract are incorporated herein as if copied herein *in extenso*.

9.

On October 7, 2003 Craver was suspended by the NFL under the NFL Drug Program; this suspension constituted a default of the Contract. Based on Craver's default, the Saints demanded that Craver return $182,167.00 of the $273,250.00 Bonus in accordance with the forfeiture schedule set forth in the Contract. Craver refused to return the $182,167.00. The parties could not resolve the dispute.

10.

Article IX of the NFL CBA provides, in pertinent part, that "any dispute (hereinafter referred to as a 'grievance') arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players," shall be finally settled by arbitration. (See NFL CBA, Art. IX § 1, Exhibit "A")

11.

Pursuant to Article IX of the CBA, the Saints and the NFL Management Council filed a non-injury grievance against Craver claiming that he wrongfully retained $182,167.00 of his Signing, Reporting and Playing Bonus.

12.

On May 5, 2004, an arbitration hearing was conducted in accordance with Article IX in New Orleans, Louisiana, before an arbitrator appointed as provided by Article IX of the NFL CBA.

13.

On November 26, 2004, the arbitrator issued a written final award ("Award"). A copy of the Award is attached hereto, to be made a part hereof, as Exhibit "B."

14.

The arbitrator sustained the grievance and ordered Craver to "immediately return to the Saints $182,167.00."

15.

Under the NFL CBA, the Award constitutes the "full, final, and complete disposition of the grievance, and will be binding upon the Player(s) and the Club(s) involved and the parties to the Agreement..." (See NFL CBA, Art. IX § 8, Exhibit "A")

16.

The Award was consistent with the NFL CBA, which provides that arbitration awards must be paid within thirty days from the date the decision was received. (See NFL CBA, Art. IX § 12, Exhibit "A")

17.

Upon information and belief, Craver received the Award on November 29, 2004.

18.

More than thirty days have elapsed since Craver received the Award and Craver has not complied with the Award. Nor has Craver sought to vacate, modify or challenge the Award.

IV. PRAYER FOR RELIEF

19.

Craver's failure to return the $182,167.00 to the Saints as ordered by the arbitrator constitutes a breach of the NFL CBA and is therefore actionable under Section 301 of the LMRA, 29 U.S.C. § 185.

WHEREFORE, premises considered, Plaintiffs pray that Defendants be served with a copy of this Complaint, and that after due proceedings are had, This Honorable Court enter judgment confirming the Arbitration Award issued November 26, 2004, directing Keyou Craver to immediately return to the New Orleans Louisiana Saints, L.L.C. the sum of $182,167.00, plus all legally allowable costs of these proceedings, attorney's fees and interest as provided by law.

IT IS FURTHER PRAYED that this Court award to the Plaintiffs any and all general and equitable relief to which they may be entitled.

Respectfully submitted, this __23'rd__ day of November, 2005.

*/s/ W. Gothard*

Edward P. Gothard, Bar Roll No. 16775
NOWALSKY, BRONSTON & GOTHARD
A Professional Limited Liability Company
3500 North Causeway Boulevard, Suite 1442
Metairie, Louisiana 70002
Telephone: (504) 832-1984
Facsimile: (504) 831-0892
E-mail: Egothard@nbglaw.com
Counsel for New Orleans Louisiana Saints, L.L.C.
and National Football League Management Council

# ARTICLE IX
# NON-INJURY GRIEVANCE

**Section 1. Definition:** Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute.

**Section 2. Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within forty-five (45) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within forty-five (45) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

**Section 3. Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or fax with the Management Council and furnishing a copy of such notice to the Club(s) involved; a Club or the Management Council may initiate a grievance by filing written notice by certified mail or fax with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or fax within seven (7) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable.

**Section 4. Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken, and either the NFL

22

EXHIBIT

A

the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven (7) days of the filing of the grievance. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven (7) days with respect to four (4) grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five (5) days of the completion of the hearing. Prehearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

**Section 5. Discovery:** No later than ten (10) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than ten (10) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two (2) days prior to the hearing unless the arbitrator indicates otherwise.

**Section 6. Arbitration Panel:** There will be a panel of four (4) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties will designate the Notice Arbitrator within ten (10) days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty (30) days of any vacancy, the Notice Arbitrator shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. With-

in fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

**Section 7. Hearing:** Each arbitrator will designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 15 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-

24

hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at issue, in which cases briefs will not be submitted. Briefs must be submitted to the arbitrator postmarked no later than sixty (60) days after receipt of the last transcript.

**Section 8. Arbitrator's Decision and Award**: The arbitrator will issue a written decision within thirty (30) days of the submission of briefs, but in no event shall he consider briefs filed by either party more than sixty (60) days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or an order of compliance, with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XIII (Committees), Section 1(c). In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of the grievance. The interest shall be calculated at the one-year Treasury *Note* rate published in the Wall Street Journal as of *February* 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

*\*Extension Agreement 1/8/02*

**Section 9. Time Limits**: Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player, the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

**Section 10. Representation**: In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

Article IX, Non-Injury Grievance

*Section 11.* **Costs**: All costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the parties. Notwithstanding the above, if the hearing occurs in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city and one night's lodging.

*Section 12.* **Payment**: If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, interest will be assessed against the Club from the date of the decision. Interest shall be calculated at double the one-year Treasury Note rate published in the Wall Street Journal as of *February* 1 (or next date published) of each year, and such rate shall apply to the interest awarded during each subsequent twelve (12) month period in lieu of continuation of any pre-award interest. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.
*Extension Agreement 1/8/02*

*Section 13.* **Grievance Settlement Committee**: A grievance settlement committee consisting of the Executive Director of the NFLPA and the Executive Vice President for Labor Relations of the NFL shall have the authority to resolve any grievance filed under this Article. This committee shall meet periodically to discuss and consider pending grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of the two members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement. Consideration of any grievance by this committee shall not in any way delay its processing through the non-injury grievance procedure described in this Article, and no grievance may be resolved pursuant to this Section once an arbitration hearing has been convened pursuant to Section 7 hereof.

26

| | |
|---|---|
| In the Matter of Arbitration Between: | OPINION AND DECISION |
| THE NATIONAL LEAGUE FOOTBALL LEAGUE MANAGEMENT COUNCIL AND THE NEW ORLEANS SAINTS, | OF |
| Grievants | SAM KAGEL |
| And | ARBITRATOR |
| THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, ON BEHALF OF KEYOU CRAVER | SAN FRANCISCO, CA |
| Respondents. | Nov. 26, 2004 |

RECEIVED NOV 29 2004 NFL MANAGEMENT COUNCIL

**ISSUE:**

Did Keyou Craver wrongfully retain $182,167.00 of his Signing, Reporting, and Playing Bonus ("Bonus") paid to him by the Saints pursuant to his 2002 NFL Player contract.

**THE HEARING:**

The hearing took place in New Orleans on May 5, 2004.

**PERTINENT CONTRACT PROVISION:**

Craver's contract with the Saints included the following provision:

In the event Player fails or refuses to report to Club, or fails or refuses to practice or play with Club at any time for any reason including Player's suspension by the NFL or Club for Conduct Detrimental or suspension for violating the NFL Policy and Program for Substances of Abuse, the NFL Policy and Procedures for Anabolic Steroids and Related Substances, the NFL Personal Conduct Policy, or in the event player leaves Club without its consent during the duration of the above contract years, then Player shall be in default. In the event of Player's default, upon demand by Club, Player shall immediately return and refund to the Club any of the Bonus previously paid by Club and Player shall relinquish the right to receive any unpaid Bonus in the proportionate amount set forth below:

| Contract Year Player Defaults to Club | Amount of Bonus Player Returns |
|---|---|
| 2002 | $ 273,250.00 |
| 2003 | $ 182,167.00 |
| 2004 | $ 91,083.00 |

1

EXHIBIT B

That language was agreed to in 2002.

**FACTUAL BACKGROUND:**

Craver was drafted in the fourth round of the 2002 NFL draft by the New Orleans Saints. See Jt. Ex. 8. Subsequent to the draft, on July 26, 2002, he negotiated and signed a three-year NFL Player Contract ("Contract") with the Saints. See Jt. Ex. 2. The Contract included a Signing, Reporting and Playing Bonus ("Bonus") for Craver's promise to adhere to all of the Contract's terms, including avoiding suspension under the Drug Program. Id. at 6. The express language of the Bonus Addendum set forth a forfeiture schedule which made clear the amount to be repaid in the event of Craver's default. The default language is quoted above with the attendant schedule.

Craver then accepted his Bonus check in the amount of $273,250 and proceeded to fulfill his obligations under the Contract without challenge. See Tr. 34; Jt. Ex. 8 at 5; Tr. 82-83.

Craver participated fully in the 2002 NFL season, primarily in specialized defensive packages and on special teams for the Saints. See Jt. Ex. 8 at 7; Tr. 53. However, on September 4, 2003 - three days before the first 2003 regular season game and just one season after taking $273,250 from the Saints in consideration for his promise to report, practice and play for the Contract's three-year term without suspension under the Drug Program - Craver tested positive for marijuana. See Jt. Ex. 9. As a repeat offender, he was suspended from the NFL for four regular season games. Jt. Ex. 9 at 9. Craver did not appeal his suspension, and on October 7, 2003, he was placed on Reserve/Suspension by the Commissioner. See Cl. Ex. 1. Consequently, Craver missed the next four games, as well as a fifth week due to continuing treatment. Tr. 37.

On December 8, 2003, The National Football League Management Council demanded that Keyou Craver return $182,167 of the $273,250 Bonus. Craver refused, and this grievance ensued.

**POSITION OF THE PARTIES:**

    A.    **Player's Position.**

Craver argues that the operative Bonus clause is not an enforceable liquidated damages provision, is adhesive, and results in the imposition of a double penalty.

    B.    **Club's Position.**

The Club argues that Craver was paid $182,167 in exchange for his promise, inter alia, to show up for games and practice, and to abstain from the use of illicit drugs. It denies that the provision is a liquidated damages clause, that the provision was adhesive, or that Craver is being penalized.

**DISCUSSION:**

Craver was paid a bonus in exchange his promise to show up, and to not use drugs. He breached his promise.

**DECISION:**

The Saints demand that Craver return the $182,167.00 that was paid to him in exchange for his promise to play, and to abstain from drug use, is upheld. Craver admittedly used marijuana, and was in violation of the Addendum when he did.

Craver shall immediately return to the Saints $182,167.00.

*Sam Kagel*
Sam Kagel, Arbitrator